RECORD NUMBER: 14-1906

# United States Court of Appeals
## *for the*
# Fourth Circuit

**JAMES J. ROWE; SHARON H. ROWE,**

*Plaintiffs/Appellants,*

– v. –

**AURORA COMMERCIAL CORP., f/k/a Aurora Loan Services, Inc., a Delaware Corporation; NATIONSTAR MORTGAGE, LLC, a Texas Limited Liability Company,**

*Defendants/Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT BECKLEY

# BRIEF OF APPELLEES

JOHN C. LYNCH
JASON E. MANNING
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia 23462
T: (757) 687-7500
F: (757) 687-7510

*Counsel for Appellees*

CP   COUNSEL PRESS • VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information

No. <u>14-1906</u>          Caption: <u>Rowe v. Aurora Commercial Corp., et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Aurora Commercial Corp., f/k/a Aurora Loan Services, Inc.</u>
(name of party/amicus)

who is <u>appellee</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

2.  Does party/amicus have any parent corporations?  ☒ YES ☐ NO

    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

    **Aurora Loan Services LLC is a wholly-owned subsidiary of Aurora Commercial Corp., a Delaware corporation, which is a wholly owned subsidiary of Lehman Brothers Bancorp Inc., a Delaware corporation, which is wholly owned direct subsidiary of Lehman Brothers Holdings Inc., a Delaware corporation.**

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

    If yes, identify all such owners:

- 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☒ NO

If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☒ NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☒ NO

If yes, identify any trustee and the members of any creditors' committee:

Signature: _____/s/ John C. Lynch_____    Date: _September 11, 2014_____

Counsel for: __Aurora Commercial Corp., f/k/a Aurora Loan Services, Inc._____

- 2 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of September, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

**<u>Counsel for Appellants</u>**
L. Lee Javins, II, Esq. (ljavins@bbjlc.com)
Guy R. Bucci, Esq. (kpaxton@bbjlc.com)
Mark A. Barney, Esq. (mbarney@bbjlc.com)
Bucci, Bailey & Javins, L.C.
213 Hale Street
P.O. Box 3712
Charleston, WV 2533

/s/ John C. Lynch      September 11, 2014
(Signature)         (Date)

23120272v1

10/28/2013 SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information

No. _14-1906_          Caption: Rowe v. Aurora Commercial Corp., et al. _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

Nationstar Mortgage LLC _____
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

2.  Does party/amicus have any parent corporations?  ☒ YES ☐ NO

    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

    **Nationstar Mortgage LLC ("Nationstar") is an indirect, wholly-owned subsidiary of a publicly-traded company, Nationstar Mortgage Holdings Inc. ("NSM Holdings"), a Delaware corporation.**

    **Nationstar is directly owned by two entities: (1) Nationstar Sub1 LLC ("Sub1") (99%) and (2) Nationstar Sub2 LLC ("Sub2") (1%). Both Sub1 and Sub2 are Delaware limited liability companies. Sub1 and Sub2 are both 100% owned by NSM Holdings.**

    **The stock of NSM Holdings is owned approximately 80% by FIF HE Holdings LLC, a Delaware limited liability company, and approximately 20% by public stockholders.**

- 1 -

10/28/2013 SCC

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES  ☒ NO

   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES  ☒ NO

   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐ YES  ☒ NO

   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐ YES  ☒ NO

   If yes, identify any trustee and the members of any creditors' committee:

Signature: _____/s/ John C. Lynch_____     Date: __September 11, 2014_____

Counsel for: __Nationstar Mortgage, LLC___

10/28/2013 SCC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of September, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

**<u>Counsel for Appellants</u>**
L. Lee Javins, II, Esq. (ljavins@bbjlc.com)
Guy R. Bucci, Esq. (kpaxton@bbjlc.com)
Mark A. Barney, Esq. (mbarney@bbjlc.com)
Bucci, Bailey & Javins, L.C.
213 Hale Street
P.O. Box 3712
Charleston, WV 2533

/s/ John C. Lynch            September 11, 2014
(Signature)                           (Date)

23120262v1

10/28/2013 SCC

# TABLE OF CONTENTS

Page

Corporate Disclosure Statement

Table of Authorities ................................................................................. iii

Counter-Statement of Issues for Review ................................................. 1

Statement of the Case.............................................................................. 2

Statement of Facts ................................................................................... 3

Summary of Argument ............................................................................ 8

Argument.................................................................................................. 9

I.      Standard Of Review...................................................................... 9

        1.      Motion to Dismiss ............................................................. 9

        2.      Motion to Amend ............................................................ 10

II.     The District Court Correctly Dismissed The Rowes' Fraud Claim ............. 12

        1.      The Rowes failed to plead their fraud claim with particularity ......... 12

                A.      The Rowes failed to plead "what" constituted the alleged fraud ....................................................... 13

                B.      The Rowes failed to plead "who" perpetrated the alleged fraud ....................................................... 17

                C.      The Rowes failed to plead "when" the alleged fraud occurred.................................................... 18

                D.      The Rowes failed to plead any justifiable reliance on the alleged misrepresentation........................................ 19

        2.      The Rowes failed to sufficiently plead constructive fraud ............... 21

i

3. The Rowes' fraud claim is barred by the statute of limitations ......... 23

4. The District Court properly exercised its discretion in denying the Rowes leave to amend their fraud claim ..................................... 25

    A. The Rowes failed to properly request leave to amend their fraud claim ....................................................................... 25

    B. Any amendments to the fraud claim would have been futile ............................................................................................. 26

III. The District Court Properly Exercised Its Discretion In Denying Leave To Amend The Rowes' Unconscionability Claim .......................... 27

1. The Rowes failed to properly request leave to amend their unconscionability claim.............................................................. 27

2. Any amendments to the unconscionability claim would have been futile ...................................................................................... 28

IV. The District Court Properly Exercised Its Discretion In Denying Leave To Amend The Rowes' TILA Claims ................................................. 31

1. The Rowes' TILA claims are time-barred ......................................... 32

Conclusion ....................................................................................................... 36

Certificate of Compliance ............................................................................. 38

Certificate of Service ..................................................................................... 39

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) .......................................................................... 10, 15, 16

*Balas v. Huntington Ingalls Indus.*,
   711 F.3d 401 (4th Cir. 2013) ............................................................................. 11

*Barnes v. W., Inc.*,
   243 F. Supp. 2d 559 (E.D. Va. 2003) ................................................................ 33

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................... 10, 15

*Cada v. Baxter Healthcare Corp.*,
   920 F.2d 446 (7th Cir. 1990) ............................................................................. 35

*Caper Corp. v. Wells Fargo Bank, N.A.*,
   No. 13-2152, 2014 U.S. App. LEXIS 13664 (4th Cir. July 17, 2014) .............. 16, 18

*Cardiello v. Money Store, Inc.*,
   No. 00 Civ. 7332, 2001 U.S. Dist. LEXIS 7107 (S.D.N.Y. May 31, 2001)............ 34

*Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*,
   606 S.E.2d 752 (S.C. 2004) .............................................................................. 29

*Chao v. Va. DOT*,
   291 F.3d 276 (4th Cir. 2002) ........................................................................ 35, 36

*Childers Oil Co. v. Exxon Corp.*,
   960 F.2d 1265 (4th Cir. 1992) ........................................................................... 23

*Confederate Mem'l Ass'n, Inc. v. Hines*,
   995 F.2d 295 (D.C. Cir. 1993) ............................................................... 11, 26, 28

*Cordial v. Ernst & Young*,
   483 S.E.2d 248 (W. Va. 1996)....................................................................... 12, 13

*Cozzarelli v. Inspire Pharms., Inc.*,
   549 F.3d 618 (4th Cir. 2008) .................................................................. 11, 26, 28

*De Sole v. United States*,
   947 F.2d 1169 (4th Cir. 1991) ........................................................................... 10

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987)................................................................. 13, 17

*Drager v. PLIVA USA, Inc.*,
    741 F.3d 470 (4th Cir. 2014) .................................................................. 10

*Dunn v. Rockwell*,
    689 S.E.2d 255 (W. Va. 2009)................................................................. 24

*Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*,
    213 F.3d 175 (4th Cir. 2000) .............................................................. 10, 21

*Edwards v. Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) .................................................................. 10

*Elk Ref. Co. v. Daniel*,
    199 F.2d 479 (4th Cir. 1952) .................................................................. 12

*English v. Pabst Brewing Co.*,
    828 F.2d 1047 (4th Cir. 1987) ............................................................ 35, 36

*Felty v. Graves-Humphreys*,
    818 F.2d 1126 (4th Cir. 1987) ................................................................. 35

*First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*,
    882 F.2d 862 (4th Cir. 1989) .................................................................. 31

*Goodman v. PraxAir, Inc.*,
    494 F.3d 458 (4th Cir. 2007) ........................................................ 23, 30, 36

*Hamilton v. 1st Source Bank*,
    928 F.2d 86 (4th Cir. 1990) .................................................................... 33

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) .................................................................. 13

*Hitachi Credit Am. Corp. v. Signet Bank*,
    166 F.3d 614 (4th Cir. 1999) .................................................................. 20

*Holmes v. Chesapeake Appalachia, LLC*,
    No. 5:11CV123, 2012 U.S. Dist. LEXIS 119212 (N.D. W. Va. Aug. 23, 2012) .................... 24

*Irwin v. Dep't of Veterans*,
    498 U.S. 89 (1990)................................................................................ 35

iv

*Janssen v. Carolina Lumber Co.*,
  73 S.E.2d 12 (W. Va. 1952) .................................................................. 14

*Jones v. Fulton Bank, N.A.*,
  565 F. App'x 251 (4th Cir. 2014) ......................................................... 10

*Jones v. Saxon Mortg.*,
  537 F.3d 320 (4th Cir. 1998) ................................................................ 31

*Juntti v. Prudential-Bache Sec., Inc.*,
  993 F.2d 228, 1993 U.S. App. LEXIS 10345 (4th Cir. 1993) ........................................... 13, 17

*Katyle v. Penn Nat'l Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) ................................................................ 11

*Knapp v. Am. Gen. Finance Co.*,
  111 F. Supp. 2d 758 (S.D. W. Va. 2000) ............................................... 21

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ............................................................... 11

*Kuechler v. Peoples Bank*,
  602 F. Supp. 2d 625 (D. Md. 2009) ..................................................... 22

*Laber v. Harvey*,
  438 F.3d 404 (4th Cir. 2006) ............................................................. 8, 11

*Massey v. Ojaniit*,
  759 F.3d 343 (4th Cir. 2014) ............................................................... 4, 5

*Meridian Title Ins. Co. v Lilly Homes, Inc.*,
  735 F. Supp. 182 (E.D. Va. 1990) ........................................................ 20

*Miller v. Huntington & Ohio Bridge Co.*,
  15 S.E.2d 687 (W. Va. 1941) ................................................................ 19

*Mt. Link Assocs. v. Chesapeake Energy Corp.*,
  No. 2:13-cv-16860, 2014 U.S. Dist. LEXIS 136909 (S.D. W. Va. Sept. 29, 2014) ................ 21

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ................................................................ 16

*Nourison Rug Corp. v. Parvizian*,
  535 F.3d 295 (4th Cir. 2008) ................................................................ 10

*Novell, Inc. v. Microsoft Corp.*,
  505 F.3d 302 (4th Cir. 2007) ................................................................ 9

*Philips v. Pitt Cnty. Mem'l Hosp.*,
  572 F.3d 176 (4th Cir. 2009) ............................................................. 4, 5

*Price v. Litton Business Sys.*,
  694 F.2d 963 (4th Cir. 1982) ............................................................. 35

*RG Steel Wheeling, LLC v. Health Plan of the Upper Ohio Valley, Inc.*,
  No. 5:13CV7, 2014 U.S. Dist. LEXIS 107108 (N.D. W. Va. Aug. 5, 2014) .................... 11, 28

*Richmond, Fredericksburg & Potomac R.R. v. Forst*,
  4 F.3d 244 (4th Cir. 1993) ............................................................. 23, 31

*Robinson v. Quicken Loans, Inc.*,
  988 F. Supp. 2d 615 (S.D. W. Va. 2013) .................................................. 24

*Soliva v. Shand, Morahan & Co., Inc.*,
  345 S.E.2d 33 (W. Va. 1986) ............................................................. 20

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
  365 F.3d 353 (5th Cir. 2004) ............................................................ 17

*Spaulding v. Wells Fargo Bank, N.A.*,
  714 F.3d 769 (4th Cir. 2013) ............................................................ 22

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
  71 F.3d 119 (4th Cir. 1995) ............................................................. 34

*United States ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*,
  745 F.3d 131 (4th Cir. 2014) ............................................................ 16

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
  389 F.3d 1251 (D.C. Cir. 2004) .......................................................... 11

*United States v. Aparicio-Soria*,
  740 F.3d 152 (4th Cir. 2014) (en banc) .................................................. 24

*Weinberger v. Retail Credit Co.*,
  498 F.2d 552 (4th Cir. 1974) ............................................................ 34

*White v. Nat'l Steel Corp.*,
  938 F.2d 474 (4th Cir. 1991) ......................................................... 14, 22

## Rules, Statutes, and Other Authorities

15 U.S.C. § 1601 ................................................................................. 32

15 U.S.C. § 1635(f) ........................................................................... 31

15 U.S.C. § 1640(e) ........................................................................... 33

15 U.S.C. 1635(f) .............................................................................. 31

Fed.R.Civ.P. 9(b) ............................................................................... 23

Fed.R.Civ.P. 12(b)(6) ............................................................. 4, 16, 23, 30

S.C. Code § 37-10-105(A) ................................................................. 30

S.C. Code § 37-5-108 ........................................................................ 28

W. Va. Code § 55-2-12 ...................................................................... 23

Black's Law Dictionary 1757 (10th ed. 2014) ................................... 29

http://www.courtswv.gov/ lower-courts/counties/greenbrier.html ................ 4

http://www.fedprimerate.com/libor/libor_rates_history.htm ........................ 5

http://www.forbes.com/profile/sharon-rowe/ ......................................... 4

http://www.zillow.com/homes/15-governors-road,-hilton-head-island,-sc_rb/#/ homedetails/15-Governors-Rd-Hilton-Head-Island-SC-29928/68788215_zpid/ ....................... 4

http://www.zillow.com/homes/15-governors-road,-hilton-head-island,-sc_rb/#/homedetails/15-Governors-Rd-Hilton-Head-Island-SC-29928/68788215_zpid/ ............... 6

## COUNTER-STATEMENT OF ISSUES FOR REVIEW

The issues presented by the Rowes' appeal are appropriately framed as follows:

1a. Did the District Court properly dismiss the Rowes' fraud claim, especially where the Rowes failed to plead their claim with particularity as required by Rule 9 of the Federal Rules of Civil Procedure, failed to sufficiently plead justifiable reliance on the alleged misrepresentations, and failed to file their claim within the statute of limitations?

1b. Did the District Court properly act within its discretion in refusing to allow the Rowes to amend their fraud claim, especially where the Rowes failed to properly request leave to amend and where such claim would have been futile?

2. Did the District Court properly act within its discretion in refusing to allow the Rowes to assert a claim for unconscionability under South Carolina law, especially where the Rowes failed to properly request leave to amend and where such claim would have been futile?

3. Did the District Court properly act within its discretion in denying the Rowes' motion for leave to assert Truth in Lending Act claims against the creditor where the face of the Rowes' Amended Complaint demonstrates that such claims would be barred by the statute of limitations?

## STATEMENT OF THE CASE

On August 1, 2013, the James J. Rowe and Sharon H. Rowe ("the Rowes" or "Plaintiffs") brought this suit against Aurora Commercial Corp., f/k/a Aurora Loan Services, Inc. ("Aurora") and Nationstar Mortgage LLC ("Nationstar") (collectively, "Defendants"), asserting Truth in Lending Act ("TILA"), fraud, contract, and unconscionability claims arising from the 2005 purchase of their second home in South Carolina.  On September 20, 2013, the Rowes amended their Complaint, adding a claim of usury under West Virginia law.  On November 5, 2013, Aurora and Nationstar filed a Motion to Dismiss the Amended Complaint, contending that the Rowes' TILA and fraud claims – brought almost eight years after the closing of their home loan – were barred by the applicable statutes of limitation.  Aurora and Nationstar also argued, *inter alia*, that (1) the Rowes had failed to plead their fraud claim with the particularity required by Federal Rule of Civil Procedure 9(b); (2) their unconscionability claim failed as a matter of law because the contract was governed by South Carolina law; and (3) the Rowes had failed to join indispensable parties by failing to allege their claims against the owner of the Loan.

On January 17, 2014, before the Court had issued any ruling on the Motion to Dismiss, the Rowes filed a Motion for Leave to Amend their Complaint, in order to add "the subject note owner/creditor . . . as a defendant."  In addition,

"[d]epending on the Court's [future] ruling upon Defendants' Motion to Dismiss," The Rowes sought to further amend their Complaint as to their fraud and TILA claims, but failed to either attach a proposed Second Amended Complaint to their motion or propose any specific amendments they wished to make.  J.A. 286, Pls.' Mot. for Leave to Am. at 1; J.A. 299, Pls.' Mem. Supp. Mot. for Leave to Am. at 1.

On August 1, 2014, the District Court issued a Memorandum Opinion and Order, dismissing all of the Rowes' claims against Aurora and Nationstar. Specifically, the District Court dismissed the Rowes' claims of TILA violations, unconscionability of contract, breach of contract, fraud, and usury.  Observing that "[t]he crux of this entire dispute concerns whether Note I or Note II governs the relationship between [the Rowes] and the obligation owner, currently Citibank," J.A. 360, Mem. Op. & Order at 25, the District Court granted the Rowes leave to amend the Complaint to assert a claim for breach of contract against the current owner of the Note.  As to the rest of the Rowes' claims, the District Court ruled that any additional amendments would be futile.  The Rowes timely noted their appeal.

## STATEMENT OF FACTS

The Rowes, residents of West Virginia, J.A. 8, Am. Compl. ¶ 2, are highly educated and sophisticated consumers.  James J. Rowe is a judge in the Circuit Court for Greenbrier County, West Virginia, and Sharon H. Rowe is an

accomplished businesswoman who has served on the Boards of Directors of several banks, including Greenbrier Valley National Bank, Horizon Bancorp, Inc., and City National Bank.[1]  The Rowes purchased a second home in Hilton Head Island, South Carolina ("the Property").  *Id.*[2]  The price of the Property, located in the Sea Pines Country Club, was $835,000.  The Rowes obtained a loan from TM Capital, Inc. ("TM Capital") for $626,250 with an adjustable interest rate and interest-only payments.  *Id.* at 9, Am. Compl. ¶¶ 8-9.  The Rowes appointed the South Carolina law firm of Laurich, Deeb & Wiseman, P.A. ("Laurich, Deeb & Wiseman") as their attorney-in-fact to handle the transaction.  *Id.*, Am. Compl. ¶ 12.

Laurich, Deeb & Wiseman signed the real estate documents on the Rowes' behalf at the closing of the loan on August 12, 2005.  *Id.*  Included in the many documents signed by the attorney-in-fact was an Adjustable Rate Note ("Note I"), reflecting an initial interest rate of 6.625%, which would be in effect for the first

---

[1]  *See* Greenbrier County Court Information, http://www.courtswv.gov/lower-courts/counties/greenbrier.html (last visited Nov. 4, 2014); Sharon Rowe – Forbes, http://www.forbes.com/profile/sharon-rowe/ (last visited Nov. 4, 2014).  "In reviewing a Rule 12(b)(6) dismissal, [this Court] may properly take judicial notice of matters of public record."  *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

[2]  *See* 15 Governors Rd, Hilton Head Island , SC 29928 - Zillow, http://www.zillow.com/homes/15-governors-road,-hilton-head-island,-sc_rb/#/homedetails/15-Governors-Rd-Hilton-Head-Island-SC-29928/68788215_zpid/ (last visited Nov. 4, 2014).

five years of the loan. *Id. at* 23, Am. Compl. Exh. A. Note I provided that, beginning in September, 2010, the interest rate would be calculated every six months by adding 2.25% ("the step") to the LIBOR index.[3] Note I also provided that the interest rate could not exceed 12.625% ("the ceiling") or go below 2.25% ("the floor"). *Id. at* 24, Am. Compl. Exh. A.[4] On August 19, 2005, Laurich, Deeb & Wiseman mailed copies of the signed loan documents to the Rowes and stated in the accompanying cover letter that the matter was closed. *Id. at* 9, Am. Compl. ¶ 12 (citing Am. Compl. Exh. D).

On September 19, 2005, before the Rowes' first payment was due to be paid on October 1, 2005, Laurich, Deeb & Wiseman sent a facsimile to the Rowes, entitled "New Original Note." *Id.* at 35, Am. Compl. Exh. E. The attached note ("Note II"), signed by the Rowes' attorney-in-fact and dated August 12, 2005, reflected the initial interest rate of 6.625%, but differed from Note I in that the step

---

[3] LIBOR stands for the London InterBank Offered Rate, and "is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ('LIBOR'), as published in the Wall Street Journal." J.A. 23-24, 36-37, Am. Compl. Exhs. A, E at ¶ 4(B). In September of 2010, the six-month LIBOR rate was 0.4778%. *See* LIBOR Rates History: Historical LIBOR Rate Information, http://www.fedprimerate.com/libor/libor_rates_history.htm (last visited Nov. 4, 2014).

[4] The addenda to Note I also reflected the initial interest rate, the step, the ceiling, and the floor recited in Note I. *See* J.A. 23-24, Am. Compl. Exh. A. This Court may "'consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Massey*, 759 F.3d at 353 (quoting *Philips*, 572 F.3d at 180).

indicated in Note II was 2.75%, rather than 2.25%, and the floor reflected in Note II was 6.625%, rather than 2.25%. *Id. at* 10, Am. Compl. ¶ 14.[5]  The cover letter sent by the Rowes' attorney-in-fact, on Laurich, Deeb & Wiseman's law firm letterhead, instructed, "If you have any questions do not hesitate to call." *Id. at* 35, Am. Compl. Exh. E.

The Rowes made their payments to Aurora for the first seven years of their loan. *Id. at* 10-11, Am. Compl. ¶¶ 17-18.  During that time, the value of the Property decreased substantially, and although the Rowes listed the Property for sale several times, they were unable to sell the Property.[6]  In 2012, the servicing of the Loan was transferred to Nationstar. *Id. at* 11, Am. Compl. ¶ 18.  On February 15, 2013, Nationstar notified the Rowes of an interest rate change from 6.625% to 4.625%. *Id. at* 45, Am. Compl. Exh. G.  On March 18, 2013, Nationstar notified the Rowes that they were two months behind on their Loan.  J.A. 81-82, Defs.' Mot. to Dismiss Exh. D.  On March 25, 2013, Nationstar notified the Rowes that, after an "audit was conducted," the Rowes' interest rate would be adjusted from

---

[5] The addenda to Note II, also reflecting the signature of the Rowes' attorney-in-fact and the date of August 12, 2005, reflect the same initial interest rate, step, ceiling, and floor as Note II.  J.A. 53-54, Defs.' Mot. to Dismiss Exhs. A-B.

[6] Price History for the Property, http://www.zillow.com/homes/15-governors-road,-hilton-head-island,-sc_rb/#/homedetails/15-Governors-Rd-Hilton-Head-Island-SC-29928/68788215_zpid/ (last visited Nov. 4, 2014).  The Property's current estimated market value is approximately $649,000. *Id.*

4.625% back to 6.625%, due to the floor of 6.625% that was effective "during the life of the mortgage." J.A. 44, Am. Compl. Exh. F.

On May 15, 2013, the Rowes disputed the interest rate increase and requested a refund or credit on the "interest overpayments." *Id. at* 11, Am. Compl. ¶ 20; *Id. at* 45, Am. Compl. Exh. G. On June 24, 2013, Nationstar wrote to the Rowes, apologizing for its February 2013 error in reducing the interest rate by 2.00%. *Id. at* 47, Am. Compl. Exh. I. Nationstar then described in detail its methodology for calculating the interest rate, and declined the Rowes' request for refund because it had correctly applied the terms of Note II, pursuant to which the interest rate is not to decrease below 6.625%. *Id.*

The Rowes defaulted on their obligations under the loan agreement and were notified by Nationstar of their default in a letter dated June 17, 2013. *Id. at* 11, Am. Compl. ¶ 21; J.A. 46, Am. Compl. Exh. H. As explained in the correspondence, the current owner of the Loan is Citibank, M.A. as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-6 ("Citibank"). *Id.* The Rowes have not made any payments on their loan since the notice of default, insisting that "the defendants' rationale for the calculation change . . . contradicts the minimum change rate of 2.250% as reflected in the original Adjustable Rate Note documents signed by and agreed to by the plaintiffs." *Id. at* 11, Am. Compl. ¶ 22.

## SUMMARY OF THE ARGUMENT

The dispute in this case is simple. The Rowes claim that their loan is governed by Note I, which they received from their attorney-in-fact shortly after the closing on August 12, 2005. Aurora and Nationstar contend that the loan is governed by Note II, also signed and dated August 12, 2005 by the Rowes' attorney-in-fact and sent to the Rowes on September 19, 2005 as the Rowes' "New Original Note".[7]

The Rowes do not challenge the dismissal of most of their claims against Aurora and Nationstar. However, they allege that their claim of actual fraud, as well as an implied claim of constructive fraud, was sufficiently alleged in the Amended Complaint and that it was "incorrect for the District Court to preclude such a claim at the pleading stage." Appellants' Opening Br. at 16. The District Court properly dismissed the fraud claim because, not only did the Rowes fail to plead their claim with the particularity required by Federal Rule of Civil Procedure 9(b), none of their "allegations tend[ed] to show falsity or wrongdoing on the part

---

[7] On appeal, the Rowes contend – for the first time – that, "[u]pon the specific attorney-in-fact signing the actual note, the transaction was complete and the authority of the specific power-of-attorney terminated." Appellants' Opening Br. at 6 n.3. To the extent that the Rowes attempt to persuade this Court that Note II is invalid, as a matter of law, because their attorney-in-fact's authority had expired, such argument was not presented to the District Court and is therefore waived on appeal. *Laber v. Harvey*, 438 F.3d 404, 429 (4th Cir. 2006). In any event, this argument is more properly asserted in a breach-of-contract claim, which is not at issue in this appeal.

of Aurora, Nationstar, or even TM Capital or Citibank." J.A. 368-69, Mem. Op. & Order at 33-34.

Furthermore, the District Court properly exercised its discretion in denying leave to further amend the Rowes' Amended Complaint. First, the District Court aptly observed that the Rowes had failed to provide any details regarding the amendments the Rowes would make to cure the pleading deficiencies raised by Aurora and Nationstar. Moreover, the District Court carefully considered whether the Rowes could possibly amend their Complaint to assert valid claims. After determining that any amendments would be futile, the District Court properly denied leave to amend.

Because the District Court's decision was fully in accordance with the applicable law and procedural rules, Aurora and Nationstar respectfully request that this Court affirm the District Court's Memorandum Opinion and Order in its entirety.

## ARGUMENT

## I.    STANDARD OF REVIEW

### 1.    <u>Motion to Dismiss</u>.

This Court conducts a *de novo* review of a district court's ruling on a motion to dismiss. *See Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 307 (4th Cir. 2007). When considering a motion to dismiss, the Court should accept as true all well-

pleaded factual allegations and should view the Amended Complaint in a light most favorable to the plaintiffs. *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). This Court, however, "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Edwards v. Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Furthermore, it is well-established that a "pleading that offers 'legal conclusions' of 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If this Court's review of the Rowes' Amended Complaint does not reveal "enough facts to state a claim to relief that is plausible on its face," the District Court's dismissal of the Amended Complaint must be affirmed. *Jones v. Fulton Bank, N.A.*, 565 F. App'x 251, 252 (4th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## 2. <u>**Motion to Amend**</u>.

This Court employs the deferential abuse of discretion standard in its review of the District Court's refusal to allow the Rowes to amend their Complaint. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)). A "'bare request in an opposition to a motion to dismiss – without any indication of the particular grounds

on which amendment is sought . . . – does not constitute a motion within the contemplation of Rule 15(a).'" *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994) (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)); *see also RG Steel Wheeling, LLC v. Health Plan of the Upper Ohio Valley, Inc.*, No. 5:13CV7, 2014 U.S. Dist. LEXIS 107108, at *29 (N.D. W. Va. Aug. 5, 2014) (observing that a request for leave to amend "embed[ded] in [a] response to a motion to dismiss," with no indication of the amendments the requesting party seeks to make, "does not qualify as a motion for leave to amend" (citing *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008); *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004))).

A district court properly denies leave to amend where "it is clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability." *Cozzarelli*, 549 F.3d at 630; *see also Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 409 (4th Cir. 2013); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  An amendment would be futile if the complaint, as amended, would not withstand a motion to dismiss. *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

11

## II.   THE DISTRICT COURT CORRECTLY DISMISSED THE ROWES' FRAUD CLAIM

### 1.   <u>The Rowes failed to plead their fraud claim with particularity.</u>

The District Court properly held that the Rowes failed to satisfy their "'unquestionably heavy'" burden in pleading a fraud claim against Aurora and Nationstar.  J.A. 365, Mem. Op. & Order at 30 (quoting *Elk Ref. Co. v. Daniel*, 199 F.2d 479, 482 (4th Cir. 1952)).  Specifically, the Court found that the Rowes' "generalized and conclusory allegations . . . fail[ed] to properly allege the time, place, and content of the alleged fraudulent misrepresentations," as "required by Federal Rule of Civil Procedure 9(b)."  *Id.* at 368, Mem. Op. & Order at 33.  In addition, the District Court found that Rowes had only "generally allege[d] fraud against 'defendants' without specifying which defendant partook in the [alleged] fraud."  *Id.*

In order to survive the Motion to Dismiss, the Rowes were required to sufficiently plead under West Virginia law that "(1) the act claimed to be fraudulent was the act of the defendant or induced by him; (2) it was material and false; (3) plaintiff relied on it and was justified under the circumstances in relying upon it; and (4) plaintiff was damaged because he relied on it."  *Id.* at 364-65, Mem. Op. & Order at 29-30 (citing *Cordial v. Ernst & Young*, 483 S.E.2d 248, 259 (W. Va. 1996)).  Pursuant to the Federal Rules of Civil Procedure, the Rowes were required to state "with particularity" the "time, place, and contents of the false

representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* at 365-66 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). "Moreover, where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* at 366 (citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)); *see also Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228, 1993 U.S. App. LEXIS 10345, at *5 (4th Cir. 1993) (table decision) (affirming district court's dismissal of complaint because complaint "refer[red] only to the actions of the 'defendants' generally, not to actions of specific defendants").

### A.    The Rowes failed to plead "what" constituted the alleged fraud.

The District Court aptly observed that "it is unclear from the amended complaint exactly what actions [the Rowes] are claiming constitute fraud." J.A. 366, Mem. Op. & Order at 31. On appeal, the Rowes insist it is "explicit throughout the Amended Complaint" that the alleged fraud consisted of the "attempt to enforce terms and conditions that were not originally agreed upon in the Adjustable Rate Note . . . and a further attempt to mislead the plaintiffs so as to induce [them] to surrender their legal rights and/or property." Appellants' Opening Br. at 17; *see also id.* at 16 (identifying the "charg[ing] and/or

attempt[ing] to charge the Rowes interest in excess of the agreed term" as the "what" element of their fraud claim). However, such allegations, even if "sufficient to state a claim for breach of contract (if Aurora and Nationstar were parties to the contract)," simply fail to "allege a claim for fraud." J.A. 367, Mem. Op. & Order at 32.

This Court has been "careful to distinguish between actual fraud and artfully pleaded breach of contract claims." *White v. Nat'l Steel Corp.*, 938 F.2d 474, 490 (4th Cir. 1991). To be sure, "fraud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events." *Id.* (quoting *Janssen v. Carolina Lumber Co.*, 73 S.E.2d 12, 17 (W. Va. 1952))). Furthermore, as the Rowes point out, "[a]ctual fraud is intentional, and consists of intentional deception to induce another to part with property or to surrender some legal right" or "willful nondisclosure of a material fact." Appellants' Opening Br. at 13, 14 (citations omitted). Although the Rowes conclusorily assert in their Amended Complaint that the alleged misrepresentation was "undertaken *intentionally* in an endeavor to misrepresent material terms and conditions of the Adjustable Rate Note" and that Appellees' "conduct was *intentional*," J.A. 18, Am. Compl. ¶¶ 55, 58 (emphasis added), the Rowes' "'formulaic recitation of the elements of [the]

14

cause of action will not do,'" *Iqbal*, 129 S. Ct. at 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). The Amended Complaint, even when viewed in the light most favorable to the Rowes, clearly demonstrates that Nationstar was simply attempting to enforce the terms and conditions contained in Note II, which bore "the signature of the plaintiffs James J. Rowe and Sharon H. Rowe with signature dates of August 12, 2005." J.A. 10, Am. Compl. ¶ 15.[8] Indeed, as the District Court observed, "the core of plaintiffs' complaint is whether Note I or Note II governs plaintiffs' relationship with their creditor – a quintessentially contractual question." J.A. 345, Mem. Op. & Order at 10.

Presumably in an attempt to convince this Court of some sort of fraudulent intent evinced by Aurora and Nationstar, the Rowes allege that Note II, "with altered interest terms more favorable to the note holder[,] was created by appellees." Appellants' Opening Br. at 15; *see also* J.A. 10, Am. Compl. ¶ 16 (alleging that the "alterations of the promissory note were done unilaterally by the defendants"). However, the Amended Complaint fails to "provide[] any sort of factual elaboration as to how this alleged 'deception' was achieved," and the Rowes' bald assertion that Aurora and Nationstar created Note II "is thus nothing more than a 'naked assertion[] devoid of further factual enhancement,'" and should

---

[8] The Rowes' Amended Complaint erroneously asserts that "August 12, 2005 [was] approximately one month prior to the original closing." J.A. 10, Am. Compl. ¶ 15. The original closing occurred on August 12, 2005.

not be credited. *Caper Corp. v. Wells Fargo Bank, N.A.*, No. 13-2152, 2014 U.S. App. LEXIS 13664, at *24 n.6 (4th Cir. July 17, 2014) (quoting *United States ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting, in turn, *Iqbal*, 556 U.S. at 678)); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) "[B]are assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes.").

Moreover, the facts alleged in the Amended Complaint plainly belie the notion that either Aurora or Nationstar "created" the second Note. The Rowes admit they "received [the] second copy of the Adjustable Rate Note" – from their attorney-in-fact – "[o]n or about September 19, 2005," before their first payment to Aurora was due on October 1, 2005, and long before Aurora "sold or transferred the plaintiffs' mortgage loan and right to collect payments to defendant Nationstar." J.A. 10-11, 35-43, Am. Compl. ¶¶ 13, 18 and Exh. E. Tellingly, the Amended Complaint makes no allegations whatsoever that the Rowes' attorney-in-fact participated in the alleged fraud by conspiring with Aurora and Nationstar to create the second Note and send it to the Rowes. Thus, because the Rowes fail to sufficiently allege the "what" element of their fraud claim, this Court should uphold the District Court's dismissal of such claim.

### B.    The Rowes failed to plead "who" perpetrated the alleged fraud.

The Rowes cannot possibly expect this Court to find that the Amended Complaint "specifically alleg[es] which defendant was responsible for which act." *Juntti*, 1993 U.S. App. LEXIS 10345, at *4 (citing *DiVittorio*, 822 F.2d at 1247). Indeed, in their opening brief, just as in their Amended Complaint, the Rowes collectively identify "Aurora Commercial Corp. and Nationstar  Mortgage, LLC" as the "who" element of their fraud claim.  Appellants' Opening Br. at 16; *see also* J.A.  18, Am. Compl. ¶ 55 (the "*defendants'* attempt to enforce terms and conditions that were not originally agreed upon" (emphasis added)); *id.* ¶ 56 ("the material misrepresentations made by the *defendants*" (emphasis added)); *id.*  ¶ 57 (the "*defendants'* endeavor to enforce unauthorized terms, conditions, fees and charges" (emphasis added)); *id.* ¶ 58 (the "*defendants'* conduct was intentional" (emphasis added)).   "Such pleading practice is insufficient either to provide a defendant with fair notice of the claim against him or to protect a defendant from harm to his reputation or goodwill."  *Juntti*, 1993 U.S. App. LEXIS 10345, at *5; *cf. Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) ("[W]e do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded.").  Accordingly, because the

Rowes have failed to sufficiently plead the "who" element of their fraud claim, the dismissal of their fraud claim should be affirmed.

### C. The Rowes failed to plead "when" the alleged fraud occurred.

The Rowes also failed to properly plead the "when" element of their claim. As discussed above, the Amended Complaint does not provide "any sort of factual elaboration" as to "how" Aurora and Nationstar supposedly created the allegedly fraudulent Note. *Caper Corp.*, 2014 U.S. App. LEXIS 13664, at *24 n.6. Nor have the Rowes attempted to explain "when" Aurora and Nationstar allegedly perpetrated such fraud, especially considering that neither Aurora nor Nationstar were parties to the agreement and that Nationstar did not begin servicing the loan until 2012, seven years after both Notes were signed by the Rowes through their attorney-in-fact.

On appeal, the Rowes assert that the "when" element of their fraud claim is "during the course of loan servicing." Appellants' Opening Br. at 16. However, the servicing of the Rowes' loan began in 2005 and is ongoing. Certainly, a span of nearly a decade cannot possibly comply with Rule 9(b)'s particularity requirement. Because the Amended Complaint is completely devoid of any specific facts establishing "when" Aurora and Nationstar committed any "intentional deception to induce [the Rowes] to part with property or to surrender some legal right," *Miller v. Huntington & Ohio Bridge Co.*, 15 S.E.2d 687 (W. Va.

1941), this Court should uphold the District Court's dismissal of the Rowes' fraud claim.

### D.     The Rowes failed to plead any justifiable reliance on the alleged misrepresentation.

The Amended Complaint also fails to allege the "essential element[] in an action for fraud" in West Virginia that the Rowes "relied on [the alleged fraudulent act]" and were "justified under the circumstances in relying upon it." *Cordial*, 483 S.E.2d at 259.  Assuming, *arguendo*, that the alleged fraudulent misrepresentation pled by the Rowes is the "charg[ing] and/or attempt[ing] to charge the Rowes interest in excess of the agreed term[s]" contained in Note I, *see* Appellants' Opening Br. at 16, the Rowes fail to allege reliance on such alleged misrepresentation.  To the contrary, the Rowes insist that they "relied upon the terms of the [*first*] note and subsequent course of performance," and that it was Aurora and Nationstar who "relied upon [the *second*] note that was not agreed to by the parties." *Id.* at 15, 19 (emphasis added).  Indeed, the Rowes attempt to demonstrate their reliance on Note I by attaching to the Amended Complaint their correspondence with Nationstar, "expressing concerns regarding [Nationstar's] calculations of interest since 2010 and requesting an audit and recalculation of the correct interest rate," J.A. 11, Am. Compl. ¶ 20, and by the filing of this lawsuit against Aurora and Nationstar.

Furthermore, even if the Amended Complaint could be interpreted as alleging the Rowes' reliance on Note I to their detriment, the Rowes cannot possibly allege that such "reliance upon the representation was reasonable and justified." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) (quoting *Meridian Title Ins. Co. v Lilly Homes, Inc.*, 735 F. Supp. 182, 185 (E.D. Va. 1990)). Indeed, the "touchstone of reasonableness is prudent investigation." *Id.* The Rowes admit they "received [the] second copy of the Adjustable Rate Note" from their attorney-in-fact "[o]n or about September 19, 2005." J.A. 10, Am. Compl. ¶ 13. The correspondence was clearly identified as the "New Original Note." J.A. 35, Am. Compl. Exh. E. Yet, the Rowes, both highly educated and sophisticated consumers, represented to the District Court that the "New Original Note," sent to them by their attorneys, on law firm letterhead, had "no more analytical significance than any other item of advertising mail or junk mail plaintiffs would have received." J.A. 169, Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss at 11. Contrary to the Rowes' claim that they know of no "authority compelling them to review a second copy of a contract," *id.*, it is well-established law that "[a] party to a contract has a duty to read the instrument," *Soliva v. Shand, Morahan & Co., Inc.*, 345 S.E.2d 33,36 (W. Va. 1986), and that "one who signs or accepts a written instrument will normally be bound in accordance with its written terms," *Knapp v. Am. Gen. Finance Co.*, 111 F. Supp.

2d 758, 763 (S.D. W. Va. 2000).  The Rowes appointed Laurich, Deeb, & Wiseman to handle the purchase of their home and sign all necessary documents on their behalf.  To suggest that the Rowes – a respected judge and a prominent businesswoman – equated the "New Original Note" to "advertising mail or junk mail" is inconceivable and this Court "need not accept as true [such] unwarranted inferences, unreasonable conclusions, or arguments."  *Eastern Shore Mkts.*, 213 F.3d at 180.

Accordingly, because the Rowes failed to plead any reliance, much less *justifiable* reliance, on any alleged misrepresentations by Aurora and Nationstar, the Rowes' fraud claim should be dismissed.  *See, e.g., Mt. Link Assocs. v. Chesapeake Energy Corp.*, No. 2:13-cv-16860, 2014 U.S. Dist. LEXIS 136909, at **28-29 (S.D. W. Va. Sept. 29, 2014) (dismissing plaintiffs' fraud claim where "Plaintiffs do not point to any acts of theirs in reliance on Defendants' representations" and, "[e]ven if they had, . . . it does not appear that any reliance would have been justifiable").

### 2.    <u>The Rowes failed to sufficiently plead constructive fraud.</u>

The Rowes argue that "the District Court erred in dismissing [their] claim of constructive fraud" for "the same reasons set forth" regarding their actual fraud claim.  Appellants' Opening Br. at 21.  Likewise, for the reasons discussed above,

Aurora and Nationstar urge this Court to uphold the District Court's dismissal of any constructive fraud claim implicitly pled in the Amended Complaint.

In addition to the arguments offered above, it is well-established that "constructive fraud is generally reserved for those cases where a fiduciary relationship exists between the parties or the fraud violates an important public policy concern." *White v. Nat'l Steel Corp.*, 938 F.2d 474, 489 (4th Cir. 1991) (discussing West Virginia law). However, "[b]anks typically do not have a fiduciary duty to their customers." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 778 (4th Cir. 2013) . "'It is well established that the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature.'" *Id.* (internal quotation marks omitted) (quoting *Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 633 (D. Md. 2009)). Indeed, "'[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement.'" *Id.*

The Rowes have not alleged either that "a fiduciary relationship exists between the parties or [that] the fraud violates an important public policy concern." *White*, 938 F.2d at 489. "[N]or do the facts show behavior so arbitrary and

irresponsible as to be egregious." *Id.* Accordingly, any constructive fraud claim implicitly pled in the Amended Complaint should be dismissed.

### 3.    The Rowes' fraud claim is barred by the statute of limitations.

Even if the Rowes had pled – or could have amended their complaint to plead – their fraud claim to comply with the particularity required by Rule 9(b), such claim would be barred by West Virginia's statute of limitations.[9] "The West Virginia statute of limitations for claims of fraud is two years." *Childers Oil Co. v. Exxon Corp.*, 960 F.2d 1265, 1271 (4th Cir. 1992) (citing W. Va. Code § 55-2-12). The statute of limitations begins to run when "the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury." *Id.* at 1272. The "discovery rule in West Virginia . . . is not a subjective one which allows for tolling until the actual date of discovery, but is rather an objective standard, which tolls the statute until such time as the plaintiffs either did, or *should have*, by reasonable diligence discovered the right of action." *Holmes v. Chesapeake Appalachia, LLC*, No. 5:11CV123, 2012 U.S. Dist. LEXIS 119212, at

---

[9] Although "a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense," a claim may be properly dismissed "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

*25 (N.D. W. Va. Aug. 23, 2012) (emphasis in original) (citing *Dunn v. Rockwell*, 689 S.E.2d 255, 264-65 (W. Va. 2009)).

Here, the Amended Complaint clearly demonstrates that the Rowes received Note II, bearing the allegedly fraudulent terms and conditions, "[o]n or about September 19, 2005." J.A. 10, Am. Compl. ¶ 13. Thus, "even under the discovery rule, [the Rowes] knew or, by the exercise of reasonable diligence, should have known of the elements of [their] claim" by September 19, 2005. *Robinson v. Quicken Loans, Inc.*, 988 F. Supp. 2d 615, 632 (S.D. W. Va. 2013). Indeed, if the Rowes had not reduced the "New Original Note" sent to them by their attorneys on law firm letterhead to the equivalent of "any other item of advertising mail or junk mail [they] would have received," J.A. 169, Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss at 11, the Rowes would have been instantly aware of the allegedly fraudulent terms contained in Note II. Accordingly, because the Rowes' fraud claim – even if properly alleged under Rule 9(b) – was brought eight years after they were charged with notice of the terms and conditions contained in the second Note, such claim is barred by West Virginia's two-year statute of limitations.[10]

---

[10] Although the District Court did not specifically address Appellees' argument that Appellants' fraud claim was barred by the statute of limitations, this Court may "affirm the district court on any ground in the record." *United States v. Aparicio-Soria*, 740 F.3d 152, 154 (4th Cir. 2014) (en banc).

**4.** **The District Court properly exercised its discretion in denying the Rowes leave to amend their fraud claim.**

    **A.** **The Rowes failed to properly request leave to amend their fraud claim.**

In their Motion for Leave to Amend, the Rowes sought "to amend as it relates to pleading . . . under plaintiffs' claim of common law fraud," "[d]epending on the Court's [future] ruling upon Defendants' Motion to Dismiss." J.A. 286, Pls.' Mot. for Leave to Amend at 1; J.A. 299, Pls.' Br. Supp. Mot. for Leave to Amend at 1. The Rowes did not provide the District Court with any "specific information or details as to how they would amend the complaint." J.A. 369, Mem. Op. & Order at 34.[11]

Now, on appeal – in a footnote of their opening brief – the Rowes contend that "the District Court abused its discretion when denying the appellants' motion to amend their complaint." Appellants' Opening Br. at 20 n.10. However, the Rowes continue to fail to provide any support for their cursory argument, such as how they could have amended their fraud claim in response to the District Court's dismissal of such claim, or why the District Court's denial of their one-sentence request to amend their fraud claim was an abuse of the District Court's discretion. Because such request, with no explanation of any amendments the Rowes wished

---

[11] The Rowes made no request in their Response to Defendants' Motion to Dismiss for leave to amend their fraud claim. *See, e.g.*, J.A. 172-74, Br. in Opp'n to Defs.' Mot. to Dismiss at 14-16.

to make to their fraud claim, "did not qualify as [a motion] for leave to amend," the District Court did not abuse its discretion "by declining to grant a motion that was never properly made." *Cozzarelli*, 549 F.3d at 630-31; *see also Hines*, 995 F.2d at 297 (affirming district court's denial of leave to amend where plaintiffs "requested an opportunity to amend their RICO claim if the court found the complaint failed to state a claim; however, they made no tender of any proposed amendment").

### B.    Any amendments to the fraud claim would have been futile.

Even if the Rowes had properly moved for leave to amend their fraud claim, such amendment would have been futile.  As the District Court observed, the "crux of this entire dispute concerns whether Note I or Note II governs the relationship between plaintiffs and the obligation owner."  J.A. 360, Mem. Op. & Order at 25.  As discussed above, the Fourth Circuit has plainly instructed that "'fraud cannot be predicated on statements which are promissory in their nature . . . and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events.'"  *White*, 938 F.2d at 490 (quoting *Janssen*, 73 S.E.2d at 17).  The Rowes allege that Aurora and Nationstar fraudulently "misrepresent[ed] material terms and conditions" of the agreement between the parties, thus presumably breaking their promise to abide by the terms of such agreement.  However, Aurora and Nationstar were not parties to

the original contract and, in any event, the Rowes' disputes with Aurora and Nationstar appear to be merely "promissory in their nature." *Id.*

The District Court noted – and the Rowes do not substantively dispute on appeal – that "the lack of any additional details indicating that the pleading defects can be cured suggests that permitting leave to amend would be futile." J.A. 369, Mem. Op. & Order at 34. Accordingly, this Court should affirm the District Court's denial of leave to amend the Rowes' fraud claim.

## III. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN DENYING LEAVE TO AMEND THE ROWES' UNCONSCIONABILITY CLAIM

### 1. <u>The Rowes failed to properly request leave to amend their unconscionability claim</u>.

The Rowes requested leave to amend their unconscionability claim in a single sentence of their pleadings. *See* J.A. 171, Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss at 13 ("Assuming for the sake of the argument that [West Virginia law] does not apply to defendants' conduct, plaintiffs hereby move to amend so that plaintiffs may raise parallel claims under the South Carolina Consumer Protection Code."); J.A. 286, Pls.' Mot. for Leave to Amend at 1 (seeking to amend "as it relates to . . . the application of South Carolina law"). Yet, as with their fraud claim, the Rowes gave the District Court no indication of the proposed amendments they wished to make under South Carolina law, seeking only to "raise parallel claims under the South Carolina Consumer Protection Code." *Id.* Thus,

because such unsupported request for leave to amend their unconscionability claim, providing no indication of any amendments the Rowes sought to make, "does not qualify as a motion for leave to amend," *RG Steel Wheeling*, 2014 U.S. Dist. LEXIS 107108, at *29 (citing *Cozzarelli*, 549 F.3d at 630-31), the District Court did not abuse its discretion "by declining to grant a motion that was never properly made," *Cozzarelli*, 549 F.3d at 630-31; *see also Hines*, 995 F.2d at 297.

###    2.    Any amendments to the unconscionability claim would have been futile.

Even if the Rowes had properly sought leave to amend their unconscionability claim under South Carolina law, such amendments would have been futile. Under South Carolina law, "the court may refuse to enforce [an] agreement" if it finds, "as a matter of law," that the agreement was "unconscionable at the time it was made" or was "induced by unconscionable conduct." S.C. Code § 37-5-108. On appeal, the Rowes assert that the District Court abused its discretion in denying them leave to amend "because South Carolina statutory law permits" a "claim of 'unconscionable conduct' against the appellees" that "does not look solely upon the four corners of the contract." Appellants' Opening Br. at 22.

S.C. Code § 37-5-108 does not define the phrase "unconscionable conduct." However, on appeal, the Rowes have crafted their own definition of the term, looking to Black's Law Dictionary and South Carolina law. According to the

Rowes, "'[c]onduct' is defined as behavior, whether by action or inaction." Appellants' Opening Br. at 23 (citing Black's Law Dictionary (9th ed. 2009)). In South Carolina, "[u]nconscionability is defined as the lack of meaningful choice on the part of one party due to one-sided contract provisions, *together with* terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Id.* (emphasis added) (quoting *Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 606 S.E.2d 752, 757 (S.C. 2004)). Thus, even under the Rowes' definition, unconscionable conduct (or behavior) requires (1) a "lack of meaningful choice on the part of one party," (2) one-sided contract provisions, *together with*" (3) unreasonably oppressive terms. *Id.* (emphasis added); *see also* Black's Law Dictionary 1757 (10th ed. 2014) ("Unconscionability is normally assessed by an objective standard: (1) one party's lack of meaningful choice, *and* (2) contractual terms that unreasonably favor the other party" (emphasis added)).[12]

The District Court correctly held that "there is nothing in the terms of Note II that render[s] it 'so oppressive that no reasonable person would make them and no fair and honest person would accept them.'" J.A. 363, Mem. Op. & Order at

---

[12] Black's Law Dictionary also defines "unconscionability" as the "principle that a court may refuse to enforce a *contract that is unfair or oppressive* because of procedural abuses during contract formation or because of overreaching contractual terms." Black's Law Dictionary 1757 (10th ed. 2014) (emphasis added).

28.  The Court pointed out that the terms of Note II were "almost identical to Note I with the exception of the higher interest floor," which was equal to the initial interest rate the Rowes had agreed to pay for the first five years of their loan.  *Id.* Noting that allowing the Rowes' claim to proceed would, in effect, "turn every breach of contract into a claim of unconscionability," the District Court properly denied the invitation to do so.  *Id.*

In any event, a unconscionability claim under South Carolina law would be futile because it is barred by South Carolina's statute of limitations.  *See* S.C. Code § 37-10-105(A) ("No debtor may bring an action for a violation of [the SCCPC] more than three years after the violation occurred.").   The facts alleged on the face of the Amended Complaint demonstrate that both Note I and Note II were signed by the Rowes' attorney-in-fact on August 12, 2005 and received by the Rowes no later than "[o]n or about September 19, 2005."  J.A. 10, Am. Compl. ¶ 13.  Thus, the time to bring a claim under the SCCPC expired on August 12, 2008. Accordingly, this Court should affirm the District Court's exercise of its discretion in denying the Rowes' request to assert an unconscionability claim under South Carolina law.[13]

---

[13] Aurora and Nationstar acknowledge that "a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred."  *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  However, in this case, the District Court properly

## IV. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN DENYING LEAVE TO AMEND THE ROWES' TILA CLAIMS

The Rowes do not dispute the District Court's dismissal of their TILA claims against Aurora and Nationstar. Nor do they appear to appeal the District Court's denial of leave to amend their claim for rescission under 15 U.S.C. 1635(f), which provides that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f).[14] Rather, the Rowes argue only that the District Court abused its discretion in denying their motion for leave to assert TILA claims for damages against the current note owner. However,

---

rejected the Rowes' motion to amend because "all facts necessary to the affirmative defense 'clearly appear[ed] on the face of the complaint.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

[14] The Rowes acknowledge that 15 U.S.C. § 1635(f) is a "statute of repose," as opposed to a statute of limitations, J.A. 165, Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss at 7; *see, e.g., Jones v. Saxon Mortg.*, 537 F.3d 320, 327 (4th Cir. 1998) ("Because § 1635(f) is a statute of repose, the time period stated therein is typically not tolled for any reason." (citing *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 865 (4th Cir. 1989))). Thus, the only possible argument to be made regarding rescission would be the one they presented to the District Court – that there was no "'consummation' or 'sale of the property' as the terms are utilized in 15 U.S.C. § 1635(f)," J.A. 165, Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss at 7.

However, as the District Court pointed out, the Amended Complaint expressly alleges that (1) the Rowes "purchased [the] real property" on or about August 12, 2005 and (2) they "rescinded their mortgage loan" on May 15, 2013, J.A. 2, 13, Am. Compl. ¶¶ 7, 30; thus, "the time for plaintiffs to seek re[s]cission had long since passed," J.A. 352, Mem. Op. & Order at 17.

because it is clear from the face of the Amended Complaint that any claims under TILA would be time-barred, regardless of against whom the claims are alleged, the District Court properly exercised its discretion in finding that any amendments would have been futile.

### 1.    The Rowes' TILA claims are time-barred.

On appeal, the Rowes assert that Aurora and Nationstar "violated the Truth in Lending Act by enforcing interest terms that were never agreed to by [the] Rowes and never materially disclosed." Appellants' Opening Br. at 26 (citing Am. Compl. ¶¶ 26-29). Because it was not until "May 15, 2013," that they "discovered they were being deceived in regard to the interest being charged by the creditor on the subject loan," the Rowes contend, their TILA claim, "filed on August 1, 2013," was filed "within one year of the appellees violating the Truth in Lending Act." Appellants' Opening Br. at 26-27. This argument fails for a number of reasons.

First, as the District Court pointed out, "TILA is concerned with disclosures made at the consummation of a transaction, not with the parties' course of performance of a contract." J.A. 354, Mem. Op. & Order at 19; *see also* 15 U.S.C. § 1601 ("It is the purpose of this title . . . to assure a meaningful disclosure of credit terms . . ."). The Rowes assert that the alleged TILA violations "are based upon extra-contractual conduct and intentional hybrid 'fraud in the treaty' on the part of the creditor in enforcing interest terms that were never materially disclosed

to the borrower." Appellants' Opening Br. at 25. This is not a proper TILA claim and the District Court properly exercised its discretion in refusing to allow the Rowes to assert such a claim.

Second, even if the Rowes were able to cobble together some sort of TILA claim based upon an alleged non-disclosure of the actual credit terms, the language regarding TILA's statute of limitations "is clear and does not contemplate application of the discovery rule." J.A. 357, Mem. Op. & Order at 22. An action under TILA must be brought "within one year from the date of the occurrence of the violation," 15 U.S.C. § 1640(e), "not from the time that the [plaintiff] discovered [the violation]," *Hamilton v. 1st Source Bank*, 928 F.2d 86, 87-88 (4th Cir. 1990) (observing that "when Congress has intended a discovery rule, it has proven capable of writing one"). Thus, the Rowes cannot rely upon an imaginary discovery rule to demonstrate their compliance with TILA's one-year statute of limitations.

Third, the Rowes are not entitled to the benefit of equitable tolling. "TILA is properly subject to equitable tolling when there has been fraudulent concealment of the plaintiff's cause of action." *Barnes v. W., Inc.*, 243 F. Supp. 2d 559, 563 (E.D. Va. 2003). Equitable tolling requires a plaintiff to demonstrate that "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; (2) the plaintiff failed to discover those facts within

the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (citing *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974)).

The Rowes argue that "the creditor never disclosed its intent to change the interest terms during the course of performance by relying upon a note the parties did not agree upon." Appellants' Opening Br. at 28. However, "[i]n cases involving TILA, 'the courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations.'" *Cardiello v. Money Store, Inc.*, No. 00 Civ. 7332, 2001 U.S. Dist. LEXIS 7107, at **15-16 (S.D.N.Y. May 31, 2001) (citing cases). To be sure, this "make[s] good sense because if the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified." *Id.* Furthermore, although the Rowes assert that "a *reasonable person* would not have discovered the change in the interest terms with due diligence," Appellants' Opening Br. at 28, they make no assertion whatsoever that they themselves exercised due diligence "to discover those facts within the statutory period," *Supermarket of Marlinton*, 71 F.3d at 122. To the contrary, the Rowes admit in their Amended Complaint that they received Note II "[o]n or about September 19, 2005," well within the one-year statute of limitations, J.A. 10, Am. Compl. ¶ 13, and merely attempt to persuade this Court

34

that they "had no duty to read every term in a purported 'copy' of a 'new original note' that was sent to them" by the attorneys they had appointed to act on their behalf in conducting the purchase of the property.  Appellants' Opening Br. at 27 n.12.  Accordingly, because the Rowes fail to demonstrate any abuse of discretion by the District Court in denying their request to amend their TILA claim, such denial should be affirmed.

Finally, the Rowes fail completely to demonstrate any entitlement to equitable tolling "as a stand-alone theory for tolling the statute of limitations."  *Id.* at 26 (citing *Chao v. Va. DOT*, 291 F.3d 276, 283 (4th Cir. 2002); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990)).  "Equitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) (citing *Felty v. Graves-Humphreys*, 818 F.2d 1126 (4th Cir. 1987); *Price v. Litton Business Sys.*, 694 F.2d 963, 965 (4th Cir. 1982)).  "Equitable tolling has been allowed 'in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *Chao*, 291 F.3d at 283 (quoting *Irwin v. Dep't of Veterans*, 498 U.S. 89, 96 (1990)).

The Rowes cannot demonstrate that they had "knowledge of the facts" necessary to plead a TILA claim. *English*, 828 F.2d at 1049. To the contrary, the Rowes assert in their Amended Complaint that they received Note II "[o]n or about September 19, 2005." J.A. 10, Am. Compl. ¶ 13. Nor do the Rowes allege any "intentional misconduct" that caused them to "miss the filing deadline," *English*, 828 F.2d at 1049, or that they were "induced or tricked by [their] adversary's misconduct into allowing the filing deadline to pass," *Chao*, 291 F.3d at 283. Thus, equitable estoppel simply does not apply to the Rowes' case.

In sum, the Rowes had, at most, three years after the 2005 purchase of the property to bring a TILA claim. The District Court properly recognized that the facts contained on the face of the Amended Complaint clearly demonstrated that any TILA claims brought against the current note owner would have been futile. *See Goodman*, 494 F.3d at 464 (observing that a claim may be properly dismissed "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" (citation omitted)). Accordingly, this Court should affirm the District Court's denial of the Rowes' motion for leave to amend their Complaint to assert a TILA claim against the current note owner.

## CONCLUSION

For the reasons set forth above, the District Court properly dismissed the Rowes' fraud claims and did not abuse its discretion in denying them leave to

amend their fraud, unconscionability, and TILA claims.  Accordingly, Aurora and Nationstar respectfully request that this Court affirm the District Court's Memorandum Opinion and Order and award it such other and further relief as the Court deems appropriate.

> AURORA COMMERCIAL CORP., f/k/a
> Aurora Loan Services, Inc.,
> a Delaware Corporation; and
> NATIONSTAR MORTGAGE, LLC,
> a Texas Limited Liability Company
>
>
> By:  ___/s/ Jason E. Manning_____
>                          Of Counsel

John C. Lynch
Jason E. Manning
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7564
Facsimile: (757) 687-1524
E-mail: john.lynch@troutmansanders.com
E-mail: jason.manning@troutmansanders.com
*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains <u>9,092</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 36(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.


AURORA COMMERCIAL CORP., f/k/a
Aurora Loan Services, Inc.,
a Delaware Corporation; and
NATIONSTAR MORTGAGE, LLC,
a Texas Limited Liability Company


By:   /s/ Jason E. Manning
                    Of Counsel


John C. Lynch
Jason E. Manning
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7564
Facsimile: (757) 687-1524
E-mail: john.lynch@troutmansanders.com
E-mail: jason.manning@troutmansanders.com
*Counsel for Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of November, 2014, I electronically filed the foregoing Brief of Appellees with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

**<u>Counsel for Appellants</u>**
L. Lee Javins, II
Guy R. Bucci
Mark A. Barney
BUCCI, BAILEY & JAVINS, LC
Post Office Box 3712
Charleston, West Virginia 25337

/s/ Jason E. Manning
John C. Lynch
Jason E. Manning
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7564
Facsimile: (757) 687-1524
john.lynch@troutmansanders.com
jason.manning@troutmansanders.com
*Counsel for Appellees*